IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ERIK MAURICE DENNIS          :
(AIS# 233138),              :
                            :
    **Plaintiff,**          :
                            :
vs.                         :    CIVIL ACTION 15-00154-WS-B
                            :
SGT. BRANDON MCKENZIE, *et* :
*al.*,                       :
                            :
    **Defendants.**         :

## REPORT AND RECOMMENDATION

Erik Maurice Dennis, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(a)(2)(R), and is now before the undersigned on Defendants Sergeant Brandon McKenzie and Sergeant Jesse W. Wilson's Motion for Summary Judgment of (Doc. 13). For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be **DENIED** on all counts and that an evidentiary hearing be scheduled to address Plaintiff's claim.

## I. Background.

Plaintiff Dennis alleges in his complaint and sworn affidavit that, on January 27, 2015, while incarcerated at Fountain Correctional Facility, he was placed in handcuffs

by Defendants Sergeant Brandon McKenzie ("McKenzie") and Sergeant Jesse W. Wilson ("Wilson") and escorted by the officers to the health care unit to receive a body chart.[1] (Doc. 1 at 4, 8). Dennis admits being "upset" and "verbally aggressive" to the officers while walking to the infirmary unit, and alleges that in response to his comments, Defendant McKenzie told him, "[S]hut the hell up; I'm tired of your mouth" and then slammed him into the wall and slung him onto the floor. (Id. at 8). Dennis claims that, while lying on the ground of the infirmary hallway with his hands cuffed behind his back, Defendants McKenzie and Wilson kicked and punched him in the face, despite his screams for them to stop, causing him to bleed from his mouth, nose, and head. (Id. at 5, 8). He further alleges that Defendants then grabbed him by his jacket, dragged him down the hallway bleeding, and ordered an inmate runner to "hurry up and get that blood off the floor." (Id. at 8). Dennis asserts that he continued to yell to Defendants, "[Y]'all trying to kill me[,]" and that, in response,

---

[1] For summary judgment purposes, the Court's analysis must begin with a description of the facts in the light most favorable to Dennis, who is the non-moving party. See Skritch v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). "[T]he 'facts' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case." Priester v. City of Rivera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

Defendant McKenzie told him, "You need to learn to watch your mouth and you wouldn't be bleeding.  I told you shut the hell up."  (Id.).

According to Dennis, a nurse in the health care unit cleaned the blood from his face, and then released him back to the segregation unit.  (Id.).  Dennis claims that subsequent thereto, he complained to officers that he could not see, that he was dizzy, and that he was in pain. (Id.).  He further contends that after lying down on his bed for several hours, he stood and immediately lost consciousness and fell to the floor.  (Id.).  Dennis was quickly transported via ambulance to the local hospital where it was determined he required airlifting to USA Hospital in Mobile, Alabama, for treatment.  (Id.).  Dennis claims he regained consciousness just before he was transported by helicopter to USA Hospital.  (Id. at 9). Dennis further claims that the medical staff at USA Hospital determined that he suffered a fractured eye socket with loss of vision and that surgery was performed to repair his left eye socket.  (Id.).  Dennis also contends that he continues to suffer pain and impaired vision in his left eye, and that he continues to cough up blood.  (Id. at 4, 9).

Dennis asserts a claim of excessive force, in violation of the Eighth Amendment, against Defendants McKenzie and Wilson. (Doc. 1). In their Answer and Special Report (Docs. 11, 12), Defendants deny Dennis' allegations to the extent that he claims his rights were violated and that they assaulted him. (Id.) Defendants also assert the defenses of absolute and qualified immunity and failure to state a claim.[2] (Docs. 11, 12). In support

---

[2] It is unclear from the Complaint whether Dennis is suing Defendants in their official capacities, individual capacities, or both. Thus, the Court will consider both. As state officials, Defendants are absolutely immune from suit for damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). Defendants are not, however, immune from suit in their official capacities for prospective injunctive relief to end continuing violations of federal law. See Ex parte Young, 209 U.S. 123, 155-56, 28 S. Ct. 441, 52 L. Ed. 714 (1908); see also Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). The Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." Skritch v. Thorton, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted).

of their defenses, Defendants have submitted affidavits,
incident reports, medical records, photographs of Dennis'
injuries, and his disciplinary summary sheet. (Docs. 12-1
– 12-6). On April 28, 2017, the Court notified the parties
that Defendants' Answer, Special Report, and supporting
materials were being converted into a Motion for Summary
Judgment and afforded the parties an opportunity to submit
briefs and other materials in support of, or opposition to,
the motion. (Doc. 13). Dennis filed a response to the
conversion order. (Doc. 14 at 1). He articulated his
desire to continue with the litigation, but did not address
the issues raised in Defendants' Special Report and
supporting materials.[3] (Id.). The Summary Judgment Motion
is now ripe and ready for consideration.

## II. Summary Judgment Standard.

Summary judgment is proper "if the movant shows that
there is no genuine dispute as to any material fact and
that the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510,
91 L.Ed.2d 202 (1986) ("The mere existence of some alleged
factual dispute between the parties will not defeat an

---

[3] Dennis included allegations regarding purported settlement
discussions; however, the Court has disregarded such
assertions as they are not properly before the Court.

otherwise properly supported motion for summary judgment."); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); see also Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993); see also Allen, supra, at 1314 ("'When a moving party has discharged its burden, the non-moving party must

then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'") (internal citations omitted); see Comer v. City of Palm Bay, Fla., 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

In considering whether Defendants are entitled to summary judgment in this action, the undersigned has viewed the facts in the light most favorable to Dennis. Comer, supra, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party."). Additionally, while the Court is required to liberally construe a pro se litigant's pleadings, the Court does not have "license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to

sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010); see also Giles v. Wal-Mart Distrib. Ctr., 359 F. App'x 91, 93 (11th Cir. 2009) (internal citations and quotations omitted) ("Although pro se pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally, this liberal construction does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."). Finally, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record -- such that no reasonable jury could believe it -- a court should not

adopted the contradicted allegations.") (citations omitted).[4]

## III. Analysis.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To establish an Eighth Amendment excessive force claim against Defendants, Dennis must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the Defendants "act[ed] with a sufficiently culpable state of mind", *i.e.*, that the defendant acted "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 & 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted). The question of "whether a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (per curiam) (citing

---

[4] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

<u>Whitley v. Albers</u>, 475 U.S. 312, 320-321, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986)).

In making this determination, the Court considers the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived, any efforts made to temper the severity of a forceful response, and the extent of injury suffered. <u>Hudson</u>, 503 U.S. at 7 (citing <u>Whitley</u>, 475 U.S. at 321); <u>see also</u> <u>Campbell</u>, *supra*, 169 F.3d at 1375 ("*Hudson* and *Whitley* outline five distinct factors relevant to ascertaining whether force was used 'maliciously and sadistically for the purpose of causing harm': (1) 'the extent of injury'; (2) 'the need for application of force'; (3) 'the relationship between that need and the amount of force used'; (4) 'any efforts made to temper the severity of a forceful response'; and (5) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the reasonable officials on the basis of acts known to them.").

Notably, 'not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Hudson</u>, 503 U.S. at 9. Rather, the use of force must be "gratuitous or disproportionate" and must have "no object but to inflict pain." <u>Skritch v. Thornton</u>, 280 F.3d 1295,

1304 (11th Cir. 2002). "It is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319. "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. Further, an excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10 (citation omitted).

However, a plaintiff is not required to show that the application of force resulted in serious injury. Id. at 8. Rather, the key inquiry under Hudson is whether the alleged conduct involved "unnecessary and wanton infliction of pain." Id. Whether a defendant's use of force is excessive, and, thus, violative of an inmate's right to be free from cruel and unusual punishment, "depends on whether the [defendant's] act 'shocks the conscience,' Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force was applied . . . maliciously

and sadistically for the very purpose of causing harm.'" Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008). "This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Hudson, 503 U.S. at 7. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Id. (quoting Whitley, *supra*, at 321). The extent of injury may also provide some indication of the amount of force actually applied. Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010).

Not surprisingly, Defendants, through sworn affidavits, dispute Dennis' version of the January 27th incident. (Docs. 12-3; 12-4). Defendants contend that, on January 27, 2015, canine officers were conducting a random drug search in Dennis' unit with their drug detection canine when Dennis yelled, "Get that fucking dog out of my face." (Doc. 12-3 at 1). Dennis was removed from his dorm unit and taken to the shower area in the segregation unit "for temporary holding pending a medical assessment for segregation placement." (Id.). Defendants contend that, at approximately 7:10 a.m., Defendants Officers McKenzie and Wilson entered the shower area and ordered Dennis to

turn around in order to be handcuffed and escorted to the health care unit to receive a body chart. (Doc. 12-3 at 1; Doc, 12-4 at 1). "Dennis refused to obey the order and stated, "Fuck this shit! I didn't do anything!" (Id.). The officers contend that they gained control of Dennis by each securing one of Dennis' arms (Defendant McKenzie grasped Dennis' left arm, while Defendant Wilson grasped Dennis' right arm), but Dennis "immediately snatched away while continuing to shout obscenities." (Id.). Defendants regained control of Dennis by each again securing Dennis' arms, and they escorted Dennis to the front lobby while Dennis "clenched his fists" and continued to act in an "aggressive and threatening manner" despite "direct orders to stop resisting." (Id.). Once the trio entered the front lobby, Defendants claim Dennis again snatched his arms away from the officers, leading Defendant McKenzie to place Dennis face down on the ground and he "applied pressure to Inmate Dennis' shoulder area with [his] knee" and secured handcuffs on Dennis. (Id.). Defendants contend that Dennis remained aggressive and continued to shout obscenities as the officers escorted him to the health care unit. (Id.).

Defendants further contend that upon entering the health care unit, Dennis' verbal aggression turned physical

when he began "kicking back toward Sergeant McKenzie."
(Doc. 12-3 at 1; Doc. 12-4 at 2).    Defendant McKenzie
claims that, in an attempt to evade Dennis' "kicks", he
lost his balance and fell to the floor, causing Dennis and
Defendant Wilson to fall to the ground as well.    (Id.).
Defendants claim that Dennis, while lying on the ground,
persisted in shouting obscenities, ignored direct commands
to stand, and began "kicking".    (Id.).    Defendants aver
that McKenzie tried to gain control of Dennis' lower body
while Defendant Wilson tried to control Dennis' upper body.
(Id.).    According to Defendants, the struggle lasted
approximately five minutes and control was regained after
Defendant Wilson struck Dennis' right brachial plexus twice
while instructing him to stop resisting.    (Doc. 12-4 at 2;
Doc. 12-3 at 2).    Dennis was then assisted to his feet,
administered a medical assessment at approximately 7:21
a.m., and escorted back to segregation.    (Id.).

Following the incident, all parties received a medical
assessment from the health care unit.    The medical records
reflect that Defendant McKenzie was observed as having an
abrasion to his left elbow.    (Doc. 12-2 at 5).    Defendant
Wilson had "redness noted" to his right elbow and right
knee.    (Doc. 12-2 at 6).    The medical records reflect that

Dennis was assessed at 7:20,[5] and was observed to have edema to the left orbital area, as well as abrasions to the left elbow and right knee. No acute distress was noted; however, Dennis complained of head and leg pain. (Doc. 12-2 at 4; Doc. 12-6 at 3). Photographs of Dennis' facial injuries reflect visible swelling and redness to his entire left eye socket, a swollen and red "knot" on his forehead above his left eye, a swollen and red "knot" (and possible cut) on his left temple, and numerous abrasions to his upper and lower lip. (Doc. 12-2 at 7-8).

The medical records also contains a chart note dated January 27, 2015, logged at 7:50,[6] stating that Dennis "arrived back from segs unit" and was bleeding from both nostrils. (Doc. 12-6 at 4). The nursing staff stopped the bleeding by application of gauze and pressure to the nose

---

[5] The medical record does not specify whether Dennis was seen at 7:20 a.m. or p.m. (*see* Doc. 12-6 at 4); however, the Court assumes, for purposes of this motion, that the medical assessment occurred in the morning, a.m., as the institutional records appear to utilize a 24-hour time notation for all documentation.

[6] Here again, the medical record does not specify whether Dennis was seen at 7:50 a.m. or p.m. (*see* Doc. 12-6 at 4). However, the Court assumes for purposes of this motion that the medical assessment occurred in the morning, a.m., as the institutional records appear to utilize a 24-hour time notation for all documentation, and because Incident Report No.: FCF-15-00116 reflects that Dennis was no longer on site at Fountain Correctional Facility at 7:50 p.m. on January 27, 2015; rather, he was en route via helicopter to USA Hospital in Mobile, Alabama. (*See* Doc. 12-2 at 3).

for two minutes. The record also reflects that the sclera of Dennis' left eye was red, edema to the left peri-orbital area was observed, and that Dennis complained of blurry vision in his left eye. (Id.). A review of the medical note suggests that Dennis' pupillary light reflex was checked and that Dennis was assessed by Dr. Iliff, the prison's physician, before being released to the segregation unit. (Id.).

The record also contains a Use of Force Incident Report prepared on January 27, 2015. (Doc. 12-2 at 2-3). The report supports the version of facts contained in Defendants' affidavits. The Incident Report also indicates that Dennis was to receive three disciplinary charges as a result of his behavior on the morning of January 27, namely "#517-Insubordination" for his outburst during the drug search and comments to the canine handler, "#925-Failure to obey a direct order and #506-Disorderly Conduct" for his actions while being escorted to the health care unit. (Doc. 12-2 at 2-3).

The Court notes that the record also contains the Classification Summary Sheet (Doc. 12-1), which details the disciplinary charges received by inmates while incarcerated at Fountain Correctional Facility. The Sheet reflects numerous infractions by Dennis. In fact, the summary lists

eleven disciplinary charges, primarily charges of insubordination and failure to obey orders, in an approximately two-year span. (Doc. 12-1 at 2). Oddly, however, there are no charges documented for the January 27th incident complained of in this action - not insubordination, failure to obey a direct order, nor disorderly conduct. (Id.).

As noted *supra*, to establish his excessive force claim, Dennis must prove both an objective and subjective component. Objectively, Dennis must show that the officers' alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that Defendants "'act[ed] with a sufficiently culpable state of mind,'" *i.e.*, that the defendants acted "maliciously and sadistically to cause harm[,]" as opposed to being applied "in a good-faith effort to maintain or restore discipline[.]" Hudson, 503 U.S. at 7. Clearly, Dennis' injuries are objectively harmful enough, as are his allegations that Defendants slammed him into the wall and to the ground while handcuffed and then punched and kicked him for incessant verbal outbursts, to establish an Eighth Amendment claim. Dennis, however, must properly allege the subjective element of such claim.

The Court finds there is no dispute that Dennis was yelling and being "verbally aggressive" during his escort to the health care unit on the morning of January 27, 2015. There is also no dispute that force was then used on Dennis in the hallway or entry to the health care unit. The issue remains, however, as to what type of force was applied and the specific events leading to its application, as Defendants contend that Dennis' verbal aggression escalated to physical aggression resulting in all parties falling to the ground, followed by the administration of two strikes to Dennis' brachial plexus, "to gain compliance" and to maintain and restore discipline. Defendants' version of the facts would no doubt support a conclusion of no constitutional violation and suggest that the force used was necessary to restore discipline. See Hudson, 503 U.S. at 6 (citing Whitley, 475 U.S. at 320) (noting that courts recognize that corrections officials often must make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'"); Danley v. Allen, 540 F.3d 1298, (11th Cir. 2008), *overruled on other grounds as recognized by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010) ("[P]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not

required to do so where an inmate repeatedly fails to follow those orders."); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."). On the other hand, Dennis alleges Defendants slammed him into the wall, slung him to the floor, and punched and kicked him in the face for his refusal to "shut up."

Based upon a thorough review of the record evidence as a whole, including the photographs of Dennis' injuries, the handwritten medical note recorded at 7:50 which indicates wounds more severe than those recorded on the initial body chart, and the lack of disciplinary charges brought against Dennis following the incident, the Court concludes that Dennis has created a genuine issue with respect to whether Defendants McKenzie and Wilson used excessive force against him on January 27, 2015. Indeed, the Court finds that material facts are in dispute regarding whether the force used was excessive under the circumstances, and that qualified immunity is not appropriate because, viewing the facts in the light most favorable to Dennis, no reasonable officer could have believed the amount of force used was constitutionally permissible under the clearly established

law. See Harris v. Chapman, 97 F.3d 499 (11th Cir. 1996) (finding excessive force used when officers kicked, beat, and harassed inmate who refused to voluntarily submit to a haircut); Williams v. Cash-C.O.I, 836 F.2d 1318 (11th Cir. 1988); (excessive force found where prisoner refused to return to his cell and after prisoner was subdued the prison guard broke the plaintiff's arm); Harris v. Whitehead, 2007 U.S. Dist. LEXIS 103167 at *28-29 (M.D. Ala. Jul. 30, 2007)(finding unconstitutional force where defendants used physical force on inmate after inmate was handcuffed and had ceased physical resistance but remained verbally uncooperative); McReynolds v. Ala. Dep't of Youth Servs., 204 F. App'x 819 (11th Cir. 2006)(finding the plaintiff set forth sufficient allegations of malicious and sadistic intent where he was neither disruptive nor a threat to staff or other inmates and defendant continued to strike him after he was injured); Skirtch, 280 F.3d 1295 (finding that Eighth Amendment rights were violated by defendants who beat prisoner when he was subdued and restrained in handcuffs); Spears v. Hernandez, 2010 U.S. Dist. LEXIS 24933 at *33-34, 2010 WL 964211 (W.D. Ark. Feb. 23, 2010) (denying summary judgment when genuine issues of fact remained as to whether or not excessive force was used against plaintiff who claimed defendants shoved him against

a wall, threw him to the ground, and punched and kicked him while on the floor, causing him to suffer injury to his right eyebrow and requiring six stitches.); Hammond v. Lapeer Cnty., 133 F. Supp. 3d 899, 922, 2015 U.S. Dist. LEXIS 129549 at *46 (E.D. Mich. Sept. 25, 2015) (denying summary judgment when "[a] reasonable juror could conclude that [officer's] conduct in shoving Plaintiff's face into the wall of the elevator, forcing Plaintiff to the floor and threatening to use his taser by pressing it into Plaintiff's neck, all while Plaintiff was handcuffed behind his back, was not necessary to maintain discipline and was malicious and intended to cause harm.). Accordingly, the Court concludes that Defendants have failed to carry their burden of proving that there is no genuine dispute as to any material fact, and thus, are not entitled to judgment as a matter of law.

**IV. Conclusion.**

Based on the foregoing analysis, the undersigned concludes that there remain genuine issues of material fact and that Defendants McKenzie and Wilson are not entitled to judgment as a matter of law on the claims and causes of action interposed by Plaintiff. Therefore, it is recommended that Defendants' Motion for Summary Judgment be

**DENIED** on all counts and that an evidentiary hearing be scheduled to address Plaintiff's claim.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in

the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this **23rd** day of **February, 2018.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**